AO 106 (Rev. 01/09) Application for a Search Warrant

[As adapted on January 17, 2012]

# UNITED STATES DISTRICT COURT

for the

District of Colorado

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  12-sw-05034-CBS |
| The HLMC Clubhouse, 4100 Garfield Street, Denver, Colorado, more fully described in Attachment A, which is incorporated by this reference. | ) ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ State and _____ District of _____ Colorado _____ *(identify the person or describe property to be searched and give its location):* As of January 20, 2012, after the Hell's Lovers Motorcycle Club(HLMC) members' meeting convenes at the Colorado Chapter HLMC Clubhouse, more fully described in Attachment A, which is hereby incorporated by this reference.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See Attachment B, attached hereto and hereby incorporated by this reference, after HLMC member's meeting is convened on January 20, 2012.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § §§841(a)(1), 856 and 846 & 18 U.S.C. § 924(c) & 18 U.S.C. § 922(g) and the application is based on these facts:

See Affidavit of S.A. Jason T. Cole attached hereto and hereby incorporated by this reference.

✓ Continued on the attached sheet.

Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____4969
*Applicant's signature*

Jason T. Cole, Special Agent - ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/18/12 at 3:15 pm

_____
*Judge's signature*

City and state: Denver Colorado

**Craig B. Shaffer, United States Magistrate Judge**
*Printed name and title*

## ATTACHMENT A

The premises informally known as the Hell's Lovers Motorcycle Club Colorado Chapter

Clubhouse

Address: 4100 Garfield Street, Denver, Colorado.

Including all outbuildings and appurtenances thereto


4100 Garfield Street, Denver, Colorado is a single story structure with white panel siding

and a red shingle roof.  The front door of the structure faces south toward 41st Avenue

and has a black wrought iron security door.  The structure is located on the southeast

corner of 41st Avenue and Garfield Street in Denver, Colorado.  The east side of the

structure is enclosed by a chain-link fence.  All exterior windows have been painted

black.  On the south side of the structure, facing toward 41st Avenue is a porch which is

partially enclosed by a painted black wall which has the appearance of being a stone wall.

The southwest corner of the stricter has a red colored brick chimney.  There is a concrete

sidewalk walkway connecting 41st Avenue to the structure.  Directly in front, and to the

right of the porch of the structure (as facing north towards the structure) is a black metal

mailbox.  A second doorway to the structure can be accessed from the front porch of the

structure and faces west.  This doorway bears a large sign which reads:  "Danger

Weapons Firing in Progress".  The windows on the west side of the structure have been

painted black and are covered in wrought iron security bars.  This location is informally

known as the Hell's Lovers Motorcycle Club clubhouse.

**ATTACHMENT B**
PERSONS AND PROPERTY TO BE SEIZED

1. The persons:  Romell E. BULLOCK, Gregory A. COLLINS, George A. GADDY, Richard W. JOHNSON, Sheps H. KHAMSAHU, Johnie A. MYERS, Calvin R. RILEY, Corey L. RILEY, Thomas A. SCHRAH, Jr. and any other persons for whom federal arrest warrants have been issued and may be within the structure at 4100 Garfield Street, Denver, Colorado and attending the meeting of HLMC Colorado Chapter members.

2. Cocaine.

3. Marijuana.

4. Contraband, including other controlled substances.

5. Firearms.

6. Ammunition and other items related to firearm possession.

7. United States Currency.

8. Indicia of ownership, occupancy, residency, or control of the premises and of the other items of evidence such as utility bills, telephone bills, and mail.

9. Any financial records, bank account records, bank statements, cancelled checks, ATF records, and internal records, notes, records, receipts, ledgers, and other items which relate to the dues and other monies used by HLMC and its members to pay for and maintain the HLMC clubhouse and other HLMC activities.

10. Notes, ledgers, lists, minutes and records of meetings to including without limitation, the minutes of Chapter meetings, Presidents' meetings, National Officers' meetings, and other member or associate meetings.

11. Any documents created and maintained by HLMC as a part of HLMC business and protocol, to include HLMC By-Laws, and records reflecting amendments to By-Laws, records reflecting HLMC interstate motorcycle runs, and any other items maintained as a regular part HLMC business.

12. Records which reflect and referring to the responsibilities of HLMC officers or any of its Chapters and or Region and National leadership.

13. HLMC vests, colors, patches, and other memorabilia evidencing an association with HLMC.

14. Any books, records, receipts, notes, bank statements, checks, money drafts, letters

of credit, money orders and cashier's checks, safe deposit box keys, safes, computer systems and information contained on computer disks and other items evidencing the obtaining, secreting, transfer and/or concealment of HLMC assets or expenditures of money.

15. Address books, telephone records, ledgers, work papers, photographs, photographic film, video tapes, cassette tapes, notes and other correspondences which relate to narcotics trafficking or affiliations amongst and between co-conspirators and other individuals.

16. Cellular telephones, smart phones and other mobile devices found on the persons of individuals for whom federal arrest warrants have been issued or for whom probable cause exists to make an arrest at the time of the execution of this warrant.

17. Drug paraphernalia, to include:   digital scales, "cutting" agents, baggies, packaging, or other items know to be associated with drug trafficking crimes.

**AFFIDAVIT**

**AFFIDAVIT OF JASON T. COLE**
**SPECIAL AGENT, BUREAU OF**
**ALCOHOL, TOBACCO AND FIREARMS (ATF),**
**IN SUPPORT OF AN APPLICATION FOR AN ANTICIPATORY**
**SEARCH AND SEIZURE WARRANT**

Your Affiant, Special Agent Jason T. Cole, being duly sworn, hereby deposes and states:

**Anticipatory Search Warrant**

1.  This affidavit is prepared in support of an application for an anticipatory search warrant contingent on the Colorado Chapter of the Hell's Lovers Motorcycle Club (HLMC) Outlaw Motorcycle Gang (OMG) convening its scheduled bi-monthly meeting on January 20, 2012, at or about 8:00 pm, at the location commonly referred to as the HLMC clubhouse.  The premises to be searched is described as follows:

2.  The premises commonly known as the **Hell's Lovers Motorcycle Club (HLMC) clubhouse** is located at **4100 Garfield Street, Denver, Colorado.**  The HLMC clubhouse is a single story structure with white panel siding and a red shingle roof.  The front door of the structure faces south toward 41st Avenue and has a black wrought iron security door.  The structure is located on the southeast corner of 41st Avenue and Garfield Street in Denver, Colorado.  The east side of the structure has an open yard enclosed by a chain-link fence.

3.  Pursuant to the terms of Rule 41(c)(1)(2)(3) and (4), your Affiant is seeking an anticipatory search warrant to enter the HLMC Colorado Chapter clubhouse after members of HLMC arrive for the scheduled members' meeting on January 20, 2012. Your Affiant requests a warrant to locate and arrest persons described below for whom

Federal arrest warrants have been issued.  Your Affiant is also asking for authority to search the HLMC Colorado Chapter clubhouse for contraband, evidence of crime, instruments of crime, or things criminally possessed, to include firearms, marijuana, cocaine, and drug paraphernalia consistent with the repeated and habitual use of the HLMC clubhouse by HLMC members and associates for the purpose of using and distributing drugs illegally.  Your Affiant is also asking for authority to search for documents and records showing HLMC members' financial support of the HLMC clubhouse and their interdependence, with respect to financial support and maintenance of the HLMC clubhouse, such as documents or records showing clubhouse expenses paid through membership dues (such as rent, utilities, cable, and other expenses), payments of dues received from members, profits from illegal activities, payments made to HLMC officers, expenses relating to illegal liquor sales, drug ledgers, HLMC membership lists and information identifying dues paid by HLMC associates, members, prospects, probates, and former HLMC members or associates.

4.  Because there is a remote possibility that the contingent event for the execution of the anticipatory search warrant (specifically, the scheduled meeting of HLMC Colorado Chapter members at the HLMC clubhouse) could be delayed until after 10:00 pm, this application also requests the court to make findings that there is good cause to provide the anticipatory search warrant may be executed at any time of the day or night.

**Background**

5.  Your Affiant is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, Denver, Colorado.  I am an "investigative or law enforcement officer of the United States," within the meaning of

Title 18, United States Code, Section 2510(7): that is an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated by statute in the United States Code. As a Special Agent of the ATF, I am designated as a peace officer by the State of Colorado under the Colorado Revised Statutes, Section 16-2.5-147 Federal Special Agents. I am authorized to apply for a search warrant under the Federal Rules of Criminal Procedure, Rule 41(a)(2)(C) as a "'Federal law enforcement' officer... who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant." I have been employed as a Special Agent with ATF since 2008. My primary duties consist of the enforcement of federal firearms laws, armed narcotics trafficking laws, and conspiracy laws. I have conducted and/or participated in a number of such investigations as an ATF Agent. Prior to becoming an ATF Special Agent, I was employed as an Agent with the United States Border Patrol for approximately 2 years and was stationed in Tucson, Arizona. During my career as a United Stated Border Patrol Agent I assisted in the apprehension and investigation of individuals involved in narcotics and human trafficking. I graduated from Pepperdine University in 2001 with a Bachelor of Arts in Communication. I have written and/or participated in the execution of approximately 30 federal and state search warrants involving organized crime, illegal firearms possession, the use and trafficking of narcotics, or armed narcotics trafficking. Additionally, during the course of this investigation I have continually consulted with ATF SA Jeffrey Russell. SA Russell has over 21 years of combined law enforcement experience, including experience with ATF, the Los Angeles, California, Police Department, and the Aurora, Colorado, Police Department. SA Russell has investigated

gang related and gang motivated crimes, as well as crimes involving the illegal use of firearms and armed narcotics trafficking.  SA Russell has been primary case agent or a participating agent on numerous gang investigations, including investigations focusing specifically on Outlaw Motorcycle Gangs (OMGs) and members and associates of OMGs.

6. As an ATF Special Agent, I am familiar with federal criminal laws pertaining to firearms and narcotics violations.  I know that it is a violation of Title 21 U.S.C. §§ 846 and 856(a)(1) and (2) and (b), for two or more persons knowingly to agree (conspire) to use or to maintain a drug-involved premises.  I know a person is legally responsible for the conduct of another person, pursuant to Title 18 U.S.C. § 2,   if said person intentionally causes, aids or abets another person to commit an offense against the United States.   I know that cocaine is defined as a Schedule II controlled substance under the Controlled Substance Act.  I know that marijuana is defined as a Schedule I controlled substance under the Controlled Substance Act.  I know that it is a violation of Title 18 U.S.C. § 924(c), for any person, during and in relation to any crime of violence or drug trafficking crime, to use or carry a firearm, or, in furtherance of any such crime, to possess a firearm. I know that it is a federal crime pursuant to Title 18 U.S.C. § 922(g) for a prohibited person, such as a convicted felon or a person who uses or is addicted to a controlled substance, to possess a firearm.  Additionally, I know that it is a violation of Title 18 U.S.C. § 1956, Laundering of monetary instruments, to move proceeds of narcotics trafficking or weapons trafficking, with the intent to promote the carrying out of specified unlawful activity.  Additionally, I know that it is a violation of Title 18 U.S.C. §§ 1962(c) and (d), to participate in any specific activities according to the Racketeer Influences and

Corrupt Organizations (RICO) Act and Conspiracy to participate in RICO acts and organizations.  And finally that it is a violation of Title 18 U.S.C. §1959 to commit specified Violent Crimes in aid of Racketeering Activity.

## INTRODUCTION

7.  On or about January 9, 2012, the Grand Jury returned an indictment in District of Colorado Case No. 12-cr-00010-MSK (a case which remains sealed except for official purposes as of today's date) including charges, at Count Thirty-One, of Conspiracy to Maintain and Use Drug-Involved Premises in violation of Title 21 U.S.C. §§ 846 and 856(a)(1) and (2) and (b).  The drug-involved premises referenced and concerned in Count Thirty-One is the location commonly known as the clubhouse of the Colorado Chapter of the Hell's Lovers Motorcycle Club currently located at 4100 Garfield Street, Denver, Colorado.

8.  The Indictment consists of thirty-two counts and names sixteen persons in various Title 18 firearms counts or Title 21 controlled substance counts.  A number of persons named in the indictment are members, prospects, former members, or former prospects of the Hell's Lovers Motorcycle Club OMG.

9.  Arrest Warrants have been issued for the following persons charged in Count Thirty-One, alleging conspiracy in relation to the drug-involved HLMC clubhouse premises:

**ROMELL E. BULLOCK,**

**GREGORY A. COLLINS,**

**GEORGE A. GADDY,**

**SHEPS H. KHAMSAHU,**

**LAWRENCE T. MARTIN,**

**JOHNIE A. MYERS,**

**CALVIN R. RILEY,**

**COREY L. RILEY, and**

**THOMAS A. SCHRAH, JR.**

Each of the defendants named in Count Thirty-One is a current or former member of the Colorado Chapter of HLMC.   HLMC member **Richard W. Johnson** was charged in Count Thirty-Two with aiding and abetting the maintenance and use of the HLMC clubhouse as a drug-involved premises.

10. Your Affiant knows from information provided by Confidential Informants (CIs) utilized during this investigation, as well as through surveillance, that Colorado Chapter HLMC members are expected to attend the regular HLMC members' meeting at the current Colorado Chapter HLMC clubhouse on Friday, January 20, 2012, starting at or about 8:00 p.m.  With the possible exception of Lawrence T. Martin, who is believed to now reside in Kansas, the above named defendants in Case No. 12-cr-00010-MSK are expected to be at the HLMC clubhouse for the members' meeting.  Specifically, it is anticipated that HLMC members **Romell E. BULLOCK, Gregory A. COLLINS, George A. GADDY, Richard W. JOHNSON, Sheps H. KHAMSAHU,  Johnie A. MYERS, Calvin R. RILEY, Corey L. RILEY**, and **Thomas A. SCHRAH, Jr.** will be arrested pursuant to arrest warrants at 4100 Garfield St., Denver, Colorado, during the January 20, 2012, scheduled meeting of HLMC members. It is expected that as many as 25-35 individual HLMC members, prospects, and probationary members will be present inside of the clubhouse at the time of the meeting.  Throughout this investigation CIs, the

ATF UC, and other individuals have stated that many HLMC members carry firearms and narcotics on their persons when they are at the clubhouse attending HLMC activities.

### Anticipatory Warrant/Permission for After Hours Service of Warrant

11. The Colorado Chapter HLMC clubhouse at 4100 Garfield Street, Denver, Colorado is situated in a relatively industrial area of Denver (as compared to a residential section of the metro area).  The structures in the immediate vicinity of 4100 Garfield Street are primarily businesses and it is anticipated that these businesses will be closed and vacant when the anticipatory search warrant is executed.  Your Affiant and ATF supervisors, ATF Tactical Advisors, and others have determined that arresting the persons for whom warrants have been issued after they have arrived at the HLMC clubhouse and the HLMC member meeting has convened, is preferable to attempting to serve these warrants in residential areas or attempting to serve these warrants through other means.

12. Your Affiant has had the opportunity to request and examine criminal histories of HLMC members and associates.  Some HLMC members have only "minor" criminal histories.  However, a number of HLMC members have been convicted of serious crimes including, but not limited to, narcotics violations, theft, homicide, burglary, fraud, sexual assault, rape, felony menacing, firearms violations, assault, aggravated theft, and aggravated robbery.

13. Your Affiant has conferred with ATF Supervisory Agents, as well as ATF Tactical advisors, and has determined that for tactical considerations concerning safety and for efficiency, it is preferred to arrest the target subjects at the same time in order to preclude targeted individuals or associates from warning each other about pending law enforcement actions or arrests of additional subjects.  Since the HLMC members named

in the arrest warrants are unlikely to gather at one location at any specific time prior to the scheduled HLMC Colorado Chapter member meeting on January 20, 2012, Your Affiant is seeking an anticipatory search warrant, contingent on the HLMC Colorado Chapter members' meeting being convened some time after 8:00 pm on January 20, 2012. After HLMC members have gathered at the meeting, your Affiant seeks authority for law enforcement officers and agents to enter and search the HLMC clubhouse located at 4100 Garfield Street, Denver, Colorado to locate and arrest the above described persons have outstanding federal arrest warrants. As further described in this affidavit, your Affiant seeks authority to conduct a search for evidence of crime at the same time.

14. Your Affiant has reviewed some published decisions of the Supreme Court and the Tenth Circuit Court of Appeals while drafting this affidavit. Your Affiant has been advised by AUSA Guy Till that it is proper in this case to seek an anticipatory search warrant based on decisions such as *United States v. Grubbs*, 547 U.S. 90 (2006), *Gooding v. United States*, 416 U.S. 430 (1974) and *United States v. Hugoboom*, 112 F.3d 108 (10th Cir. 1997), which support seeking an anticipatory search warrant for persons and evidence of crime in anticipation of a contingent event. In this case, the execution of the search warrant will be contingent upon the HLMC Colorado Chapter convening a members' meeting at the HLMC clubhouse, including members for whom federal arrest warrants have been issued for offenses including Title 21 U.S.C. § 846 and 856 and Title 18 U.S.C. § 2 (using or maintaining a drug-involved premises, conspiring to do so, or intentionally causing, aiding or abetting another to do so).

15. Your Affiant submits, further, there is probable cause to believe the clubhouse will contain evidentiary material including contraband (such as marijuana and cocaine), things

criminally possessed (such as firearms or ammunition being carried in relation to a Title 21 felony offense or in the possession of a prohibited person) and documents, photographs, records and paraphernalia representing evidence of violations of law such as Title 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Controlled Substances, Title 21 U.S.C. § 856, Maintaining a Drug-Involved Premises, and Title 21 U.S.C. Section 846, Conspiracy to do the same.

16. Your Affiant has been advised by AUSA Guy Till that Rule 41(e)(a)(A)(ii) provides the warrant must command the officers and agents to execute the warrant during "daytime" hours, unless the court expressly authorizes, under certain circumstances, the execution at another time. AUSA Till further advises that Rule 41(a)(2)(B) defines "Daytime" to mean the hours between 6:00 am and 10:00 pm according to local time. AUSA Till also advises that Title 21 U.S.C. § 879 provides, in part, that a "search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States Magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time".

17. Your Affiant knows HLMC Colorado Chapter member meetings routinely take place after dark. When the HLMC member meetings are convened, it is common practice to exclude outsiders or non-members of HLMC (commonly referred to as "civilians"). It is anticipated that any "civilians" present on January 20, 2012, will be asked to leave the HLMC clubhouse so HLMC members can conduct the meeting without "civilians" being present. Because it is remotely possible, in Your Affiant's judgment, that for some unforeseen reason the HLMC members' meeting could be delayed and might not convene

at 8:00 pm as expected, your Affiant respectfully requests the Court to authorize that the HLMC clubhouse search warrant may be executed upon the fulfillment of the contingent event, i.e. that the HLMC members' meeting has begun at the clubhouse with members in attendance, even if the HLMC members' meeting is delayed until after 10:00 pm.   If the HLMC members' meeting is delayed until after 10:00 pm for some unexpected reason, it will be necessary for the law enforcement team to wait until the anticipated contingent event takes place before executing the anticipatory search warrant.

18. Your Affiant further advises the Court that your Affiant plans to apply for search warrants of a number of additional and related locations and that, in order to avoid the destruction of evidence or create unnecessary risks for citizens and officers in related search warrants, efforts will be made to coordinate the timing of the execution of the clubhouse warrant and any related search warrants around the Denver metro area.

19. **Your Affiant respectfully requests the Court to find that there is good cause shown to permit officers to execute the HLMC clubhouse search warrant, contingent upon the HLMC members' meeting being convened at the clubhouse, at any time of the day or night.**

<u>PROBABLE CAUSE</u>

20. Your Affiant has learned of HLMC operations and membership through law enforcement investigative activities which have been on-going for several years.  I have participated in this investigation since December 2008.  Officers and Agents from ATF Denver, Colorado, ATF Kansas City, Kansas, ATF Chicago, Illinois, ATF Sacramento, California, Detectives from the Denver, Colorado Police Department, officers of the Aurora, Colorado Police Department, officers of the Lakewood, Colorado Police

Department, as well as officers and investigators from other departments and agencies have assisted in this investigation. In my capacity as case agent I have spent hundreds of hours conducting surveillance of members and associates of the Hell's Lovers Motorcycle Club (hereinafter referred to as HLMC), monitoring and directing the activities of confidential informants (CIs), monitoring the activities of an undercover ATF agent (UC), as well as coordinating and monitoring the involvement of officers serving in UC capacities to a lesser extent, and interviewing witnesses. In July 2011, I authored a Federal Search Warrant affidavit in support of an application to search the premises of 2331 Pontiac Street, Denver, Colorado, then the residence of **Corey Lamont RILEY**. Between approximately 2007 and 2011 **Corey RILEY** served as the President of the Western Region of HLMC, consisting of all HLMC chapters located in the Western United States. During the execution of the July 2011 search warrant, SAs recovered approximately 374 grams of cocaine, approximately 4248 grams of marijuana, nine (9) firearms, a ballistic vest, and several hundred rounds of ammunition of various calibers. Additionally, SAs recovered approximately $16,960.00 in United States currency. I have authored or read more than 200 Reports of Investigation (ROI's) generated by ATF agents working on this case, as well as numerous reports generated by officers, detectives and other law enforcement organizations for this case and for ancillary investigations. I have listened to numerous consensually recorded conversations between the CIs, the ATF UC, and other officers and SAs acting in UC capacities, and members or associates of HLMC. I have listened to HLMC member meetings recorded by the ATF UC and several CIs. I have read several documents created and maintained by HLMC, including the HLMC by-laws, application for

membership forms, and other materials.  The information set forth herein is based upon
my participation in this investigation, encompassing my personal knowledge,
observations and experience, as well as information obtained from my review of
investigative reports, recordings, interviews, and debriefings with the participating
officers and agents, the ATF UC, and CIs who have participated in this investigation.  For
the convenience of the court, I have typically referred to suspects by their complete
names.  I know from my discussions with the CIs and the ATF UC and from my review
of ROIs that HLMC members typically refer to each other by moniker (nicknames) rather
than by actual names.  The true identities of the suspects have been confirmed through
DMV photographs which have been shown to each of our CIs and to the ATF UC to
confirm proper identification.

**4100 Garfield Street, Denver, Colorado:**  On or about July 1, 2011, your Affiant
met with an ATF Confidential Informant (identified throughout this affidavit as CI-2).
Informant CI-2 is a "Christened" member of HLMC.  CI-2 stated that HLMC had
obtained and begun to move into a new clubhouse.  CI-2 described the clubhouse as
being located at the intersection of 41st Avenue and Garfield Street in Denver,
Colorado.  I traveled to the location and observed several HLMC members at the
address of 4100 Garfield Street, Denver, Colorado.  I have since confirmed the
location with a second CI (identified throughout this affidavit as CI-5) who is also a
"Christened" member of HLMC.  Each of these CIs has attended multiple meetings
and parties at this 4100 Garfield Street location of the HLMC clubhouse.  While
conducting surveillance at this location I have observed HLMC members Joseph
KNIGHT, Dennis KNIGHT, Solomon YOUNG, Jesse JONES and many other

members on the porch and in the area immediately around the structure. SAs have been able to confirm this location as the HLMC clubhouse through financial records, and other investigative means.

21. In December, 2008, your Affiant and ATF SA Jeffrey Russell interviewed and debriefed a CI (hereafter referred to as CI-1) who provided information relating to armed narcotics trafficking and acts of violence being conducted by members and associates of the Hell's Lovers Motorcycle Club (HLMC). CI-1 is a multi-convicted felon who is currently serving a sentence in the Colorado Department of Corrections (DOC) for a felony crime of violence. It should be noted that at the time SAs signed up CI-1 there were no pending or outstanding court cases against the CI and that the CI was not working for consideration on any criminal or civil proceedings. It should be further noted that during this investigation CI-1 was arrested and charged with a felony crime of violence and at no time did SAs attempt to intercede for CI-1. To the best of my knowledge, CI-1 provided accurate and substantive information throughout the investigation.

22. CI-1 provided extensive debriefs and interviews to SAs about the HLMC Outlaw Motorcycle Gang (OMG) both locally and nationally. SAs learned that HLMC is a national OMG with chapters in approximately 19 states and membership of approximately 400-500 individuals nationwide. CI-1 stated that HLMC is broken into "Regions" also referred to by HLMC members as "Clans" and that each region is governed by a "Clan Boss" or "Regional President". It should be noted that the terms "Clans" and "Regions" are used interchangeably by HLMC members as the designations for the geographical areas of the United States which have been divided for purpose of HLMC oversight.

23. CI-1 provided information as to the structure and criminal activities of HLMC members, associates and crimes being committed by the organization. The CI-1 identified the clubhouse of HLMC, at the time of the interview, as being a large "warehouse" type of structure located at 835 E 50th Ave., Denver, CO. This location served as the HLMC clubhouse from approximately 2005 through January of 2011. According to CI-1, drug use and drug deals were common at and within the clubhouse. CI-1 described that the clubhouse was maintained by and paid for, in part, through the collection of membership dues paid by members, prospects and probationary members of HLMC. The CI explained that dues required for membership were $50 per month, and that, additionally, members were required to pay $30 in "Regional" or "National" dues to HLMC approximately every three (3) months (or four (4) times each year).

24. CI-1 stated that HLMC is broken into four (4) Regions across the United States, the Western Region, the Southern Region, the Northern Region and the Eastern Region (though CI-1 noted that there were not any active chapters within the Eastern Region). The Colorado Chapter of HLMC is the most western Chapter of HLMC in the United States. Additionally, it is the largest Chapter in the Western Clan or Western Region. CI-1 stated that HLMC was founded in Chicago, Illinois in 1967 and that Chicago is still considered the "Mother" Chapter of HLMC. Though SAs have been able to identify and confirm that the previous two (2) National Presidents of HLMC have been members from HLMC Chapters in the Southern Clan.

25. CI-1 provided information as to the structure of HLMC, specifically the levels of membership and the structure of the club hierarchy which includes a National President, a National Board comprised of HLMC members from across the nation, a Regional

President assigned over each Region (or Clan) of the organization, a Chapter President, a Chapter Vice-President, a Treasurer for each Chapter, and typically a Secretary.

- National President:  The National President is the highest ranking member of HLMC.  The National President is in charge of the Regional Presidents and the National Board.  The National President is responsible for HLMC decisions including decisions relating to discipline of HLMC National leadership members, organizational response to disputes with other OMGs, HLMC national finances and other matters.  The National President of HLMC is currently an HLMC member identified as Lamar WASHINGTON aka RAVEN.  WASHINGTON is a member of the Southern Clan of HLMC and more specifically, the Memphis Chapter of HLMC.  The previous National President of HLMC was James E. LEE aka COLONEL, who was identified by multiple sources and CIs as being a law enforcement official of some sort.

- National Board:  The National Board of HLMC is comprised of longtime and well respected members of the organization from across the United States.  Each of the Regional Presidents is required to serve on the National Board.  HLMC Colorado Chapter member **Gregory COLLINS** serves on the National Board of HLMC. Additionally, **Sheps KHAMSAHU** currently serves as the Regional President of the Western Region of HLMC and serves on the HLMC National Board. Members of HLMC "Nation" (those members assigned to national leaderships positions and serve on the National Board of HLMC) wear a "Bottom Rocker" (portion of the three-piece patch set which typically notes an OMG member by

chapter or region) which reads "Nation" rather than denoting the individual by specific HLMC Chapter.

- Regional President:  There are three (3) Regional Presidents of HLMC (one each for the Western Region, Northern Region and Southern Region).  The Regional President is not technically required to be an active member of the Chapter with which that individual is associated.  The Regional President is tasked with overseeing all of the Chapters within the geographic designation of the Region. This includes issuing disciplinary measures for leadership members of each of the Chapters.  The President of the Western Region since approximately August 2011 is **Sheps KHAMSAHU** a "member" of the HLMC Colorado Chapter.  Between approximately 2007 and 2011 **Corey RILEY** served as the Western Regional President of HLMC.

- Chapter President:  The Chapter President is the highest ranking officer within the Chapter.  Each President is responsible for arranging member meetings and coordinating Regional meetings which occur approximately every three (3) to four (4) months at one of the Chapters within the geographic Region. Furthermore, the President is responsible for maintaining an accurate accounting of membership (for example: noting when members stop attending meetings or club functions).  The Chapter President is generally tasked with ensuring that members have paid their dues and for keeping an account (with the assistance of the Chapter Treasurer) of Chapter finances.  The President is ultimately responsible for discipline among members of an individual Chapter of HLMC. Discipline can include monetary fines, but often involves a physical assault on the

member at a meeting.  The President maintains phone lists, club rosters, and other documents which can be used to identify Chapter members and how they can be contacted.  Other officers of the Chapter may have and maintain similar documents.  The President should also have phone and address contact information for other significant members of the HLMC National leadership structure, such as the National President, National Board members, Regional Presidents and other members across the United States.  Louis OSORIO is the current HLMC Colorado Chapter President.  Between approximately 2010 and 2011 **Lawrence MARTIN** served as the Colorado Chapter President.

- Chapter Vice-President:  The Vice-President of HLMC is the second highest ranking officer specifically assigned to a chapter.  The Vice-President is generally tasked with coordinating and running HLMC Chapter meetings.  Other tasks assigned to the Vice-President are matters concerning HLMC Probationary members and Prospects.  Between 2009 and 2011 **Sheps KHAMSAHU** served as the HLMC Colorado Chapter Vice-President.  Currently **Johnie MYERS** serves as the Vice-President.  **MYERS** also currently maintains his role as the HLMC Treasurer.

- Treasurer:  The Treasurer of HLMC is responsible for maintaining and accounting for HLMC finances.  The Treasurer keeps records of dues paid by HLMC Members, Prospects and Probationary members.  All bills associated with maintaining the HLMC clubhouse are the primary responsibility of the Treasurer. Therefore, the Treasurer must ensure that rent, utilities and other expenses are paid.  The Treasurer is one of the members with access to a safe which is

maintained in the HLMC clubhouse.  The Treasurer is authorized to take money out of the safe to be put into use for buying alcohol or other items to be used at HLMC parties.  According to CIs, HLMC formerly maintained a bank account for the club, but has since started filtering all of its money through the bank account of the Treasurer, **Johnie MYERS**.  Investigators have uncovered that money (most often cash) is deposited prior to a check being written for rent or other expenses.  In the Western Region of HLMC, **MYERS** is additionally responsible for sending National dues to members in the Southern Region.  It is believed that HLMC maintains a National bank account in which funds are deposited and maintained.

- <u>Secretary</u>:  The Secretary of HLMC is responsible for keeping notes and documents for the organization.  The Secretary is sometimes tasked with (though not always required to) keep and maintain notes of HLMC member meetings.  These notes and other documents are maintained by the Secretary for use by leadership both nationally and locally.  **Thomas SCHRAH, Jr.** is the current and longtime designated Secretary of the HLMC Colorado Chapter.

26. CI-1 was able to describe the membership structure of HLMC as progressing from a "Hang Around" to becoming a "Christened" or "Tattooed" member:

- "Hang Around" status is an informal identifier of an individual who is getting to know members of HLMC in the hopes of joining the organization.

- The second phase of membership is becoming an HLMC "Prospect".  This phase is the lowest level of membership.  "Prospects" are required to have a member as a "sponsor".  They are required to fill out a membership application or "dossier"

(as it is described by HLMC members) which requires their name, date of birth, social security number and other identifying information.  This "dossier" is allegedly sent to specific though unknown to the CIs) HLMC members who conduct a background check on the individual.  "Prospect" members have a duct-taped letter "P" placed on the back of their vests until such a time as they begin earning the patches of the OMG three-piece patch (patches worn on a leather vest and used by OMGs to identify OMG members by club, and region).  "Prospects" first earn their "Top Patch" or "Top Rocker" which identifies an OMG by name (specifically, in this case the "Top Rocker" reads "Hell's Lovers").  After a period of time the "Prospect is able to earn the "Bottom Rocker" piece of the three-piece patch set.  The "Bottom Rocker" typically is used by OMGs to identify Chapter or Region with which that member is specifically associated.  In this case the "Bottom Rocker" reads "Colorado".  Lastly, "Prospects" are able to earn their "Center Patch".  This is typically the logo of the OMG to which the individual belongs.  The HLMC logo is a yellow Maltese or Iron Cross behind a skull and cross-bones.  The skull has a bleeding bullet wound on the top of the head.  The process of earning the three patches can take up to two (2) years.  Once an individual has earned all three (3) of their patches they are referred to as a "Probationary" or "Probate" member of the club.

- Probationary members within the HLMC OMG wear a full set of the three-piece patches, but are not considered full members.  Prospect and Probationary members generally have the same duties and responsibilities.  They are not allowed to attend "Christened" member portions of Chapter meetings and are sent

outside of the room.  Prospect and Probationary members are required to come to the clubhouse one night out of the week to clean and perform other tasks for "Christened" members.

- The final phase of membership is known as becoming a "Christened Member". Full members of HLMC are referred to as "Christened" or "Tattooed" brothers of the club.  This is due to the origin of HLMC which traces its roots to the Gangster Disciples gang and to the fact that full members are identified by a tattoo on the member's right forearm which shows the HLMC logo and date of the individual's "Christening".  Individuals are not allowed to pass from Probationary member to Christened member until at least four (4) years of association with the club. Individuals are required to learn about the history of the club and must be able to recite the Hell's Lovers Prayer:  "I am what I am, a Hell's Lover and that I ain't, I'll never be".  The individual is then given a "Christened" name (a nickname or moniker) which is only known to and used only by "Christened" members.

27. CI-1 described that the HLMC clubhouse was used as an after-hours bar and that individuals who were not HLMC members were charged a cover charge to come into the clubhouse and then were charged for food and drink at the HLMC "bar".  The money collected from unlicensed alcohol sales further assisted in maintaining HLMC clubhouse and member activities.  CI-1 further described that HLMC members and associates used and distributed narcotics in the clubhouse.  Specifically, CI-1 mentioned that cocaine was used and trafficked in the clubhouse by members and associates and that marijuana was often used within the clubhouse.  According the CI-1, cocaine and marijuana were used and distributed at the clubhouse most frequently during functions such as parties or

member meetings. CI-1 specified that Corey RILEY, the former Western Regional President of HLMC and long time Colorado Chapter member traffics large amounts of cocaine in Colorado and across the United States. CI-1 also mentioned that HLMC member **Calvin RILEY**, former HLMC Colorado Chapter President and longtime Colorado Chapter member, dealt cocaine within the clubhouse. CI-1 mentioned that **Sheps KHAMSAHU**, former Colorado Chapter Vice-President and current Western Regional President, and HLMC member Kirk JONES sold high grade marijuana and that marijuana was often brought to the clubhouse for consumption by other members and HLMC associates.

28. When asked about the possession and use of firearms at the HLMC clubhouse, CI-1 stated that members were generally expected to have a firearm on their person at all times. When asked to identify members who possessed firearms, the CI stated that it was easier to mention which members did not typically carry firearms. CI-1 further described several incidents in which firearms were brandished and/or fired by HLMC members at the clubhouse. These incidents included a drug dispute between members of HLMC and the Crips street gang, and other gang confrontations, "disrespect" of HLMC members by "civilians" attending an HLMC function and numerous other incidents.

29. CI-1 described that prostitutes were often brought to the clubhouse for use by HLMC members. The CI stated that HLMC member **Romell BULLOCK** was a "pimp" and often brought prostitutes to the clubhouse that were subsequently provided for "use" by HLMC members. According to CI-1 and information learned from various other interviews, these prostitutes often brought and used drugs, specifically cocaine and "ecstasy" pills while in the clubhouse.

30. CI-1 was able to purchase cocaine from HLMC member **Calvin RILEY** on two occasions. Additionally, the CI purchased cocaine and crack cocaine from several other members and associates of HLMC. On one occasion, HLMC member Jody WALTON "fronted" (provided on consignment) CI-1 a small amount of cocaine at the HLMC clubhouse and instructed that CI-1 pay a female associate of HLMC for the cocaine. The CI also completed transactions at locations other than the HLMC clubhouse. The CI purchased firearms and other items from HLMC members, HLMC associates, and persons whom the CI met through HLMC associations, which supported the information that CI-1 provided to law enforcement.

31. CI-1 provided information relating to other criminal activities of HLMC. HLMC is a "black and blue" OMG, which means that HLMC members often enforce discipline through the means of physical assaults against members who have violated or are believed to have violated HLMC rules. Other violent HLMC activities include assaults at the HLMC clubhouse, a homicide possibly perpetrated by an HLMC member in Kansas City, Kansas, and various violations of federal firearms laws.

32. In approximately February, 2009, your Affiant along with DPD Police Detective Billy Csikos interviewed and debriefed a "Christened" member of HLMC (hereafter referred to as CI-2). CI-2 is not a previously convicted felon. At no time during this investigation has CI-2 provided information to law enforcement for consideration related to any outstanding or ongoing criminal investigation. To the best of my knowledge CI-2 has provided truthful and substantive information to SAs and law enforcement officers. CI-2 provided information relating to narcotics trafficking by HLMC members, specifically, **Sheps KHAMSAHU** distributing cocaine and marijuana, and Kirk JONES distributing

marijuana.  CI-2 described that HLMC member **Romell BULLOCK** was trafficking firearms.

33. CI-2 has subsequently described cocaine trafficking by HLMC members to include **Calvin RILEY** and **Corey RILEY**.  According to CI-2, most of the drug trafficking is conducted by high ranking members within the HLMC organization.

34. When asked about drug use at the clubhouse, CI-2 stated that cocaine and marijuana are commonly and often used at the HLMC clubhouse.  The CI-2 stated that cocaine is typically ingested in the restroom or backroom of the clubhouse during HLMC parties in which "civilians" or non-members of HLMC are present at the clubhouse.  However, the CI-2 stated that marijuana is used by members and civilians alike in the open areas of the HLMC clubhouse during parties.

35. Between the dates of approximately August 2009 and March 2010 an ATF CI (hereafter referred to as CI-3), who is a long time associate of HLMC attended several parties at the HLMC clubhouse.  CI-3 is not a previously convicted felon.  It should be noted that CI-3 has several arrests to include a felony arrest, but has never been convicted of a felony crime.  At no time during this investigation has CI-3 provided information to law enforcement for consideration related to any outstanding or ongoing criminal investigation.  To the best of my knowledge CI-3 has provided truthful and substantive information to SAs and law enforcement officers.

36. Throughout the involvement of CI-3 in this investigation, CI-3 was able to provide information to SAs relating to drug use and trafficking by HLMC members.  CI-3 was able to conduct controlled purchases of cocaine from HLMC member Odis JENKINS and spoke with former HLMC Colorado Chapter President **Lawrence MARTIN** about

cocaine purchases.  According to CI-3 cocaine and marijuana use occurred regularly at the HLMC clubhouse.  CI-3 was instructed by former HLMC Colorado Chapter President **Lawrence MARTIN** to purchase cocaine from HLMC member Odis JENKINS.  CI-3 witnessed a cocaine transaction between HLMC member **Calvin RILEY** and an unidentified male in a backroom of the HLMC clubhouse.  Additionally, CI-3 mentioned that various HLMC members wanted CI-3 to ingest cocaine in order to "prove that he is not a cop".

37. CI-3 made several recorded telephone calls to HLMC member Odis JENKINS and to **Lawrence MARTIN**.  During one such recording **MARTIN**, then the HLMC Colorado Chapter President, instructed CI-3 to purchase cocaine only from "his people" (meaning HLMC members).

38. In approximately January, 2010, your Affiant and SA Russell interviewed and debriefed an ATF CI (hereafter referred to as CI-4).  CI-4 is a "Christened" member of HLMC.  CI-4 is not a previously convicted felon.  It should be noted that CI-4 has several arrests to include a felony arrest but has never been convicted of a felony crime.  CI-4 provided information, conducted controlled purchases and introduced an ATF UC to the HLMC OMG for consideration relating to possible felony drug charges in this investigation.  To the best of my knowledge CI-4 has provided truthful and substantive information to SAs and law enforcement officers.

39. When interviewed by SAs, CI-4 admitted to having previously purchased cocaine from several HLMC members, including but not limited to, current HLMC Western Regional President **Sheps KHAMSAHU** and from former HLMC Western Regional Boss **Corey RILEY**.  CI-4 provided information to me relating to drug trafficking and drug use by

HLMC members including **Richard JOHNSON**, **Calvin RILEY**, **Sheps KHAMSAHU**, Kirk JONES, and **Corey RILEY**, among others.

40. CI-4 conducted several controlled purchases of cocaine from former HLMC Regional President **Corey RILEY**. These purchases took place at 2331 Pontiac Street, Denver, Colorado, at the time the home address of **Corey RILEY**. Recordings were made of the conversations involved in the controlled purchases. Your Affiant has reviewed these recordings.

41. When later debriefed about drug use and activities at the HLMC clubhouse by SAs, CI-4 stated that cocaine and marijuana are commonly used by HLMC members and associates at the HLMC clubhouse. CI-4 mentioned that HLMC member **Calvin RILEY** often distributes cocaine at the clubhouse for consumption. Additionally, the CI noted that many HLMC members and associates smoke marijuana at the clubhouse during HLMC gatherings.

42. CI-4 introduced ATF SA West Jackson, acting in an undercover capacity (UC), to HLMC members. SA Jackson attended several HLMC parties at the HLMC clubhouse. At these parties, SA Jackson observed the use of marijuana and cocaine by HLMC members and associates. On several occasions SA Jackson was confronted and questioned by HLMC members, including but not limited to HLMC member **Joseph KNIGHT**, who stated that SA Jackson needed to either "smoke some weed" (ingest marijuana), "take a bump" (ingest an amount of cocaine) or "eat some pussy" (perform oral sex) on a prostitute attending the HLMC party, so that HLMC members would not think that SA Jackson was a law enforcement officer. Former HLMC Western Regional President **Corey RILEY** spoke with SA Jackson and offered to pay for a prostitute. When SA Jackson declined,

**Corey RILEY** continued, "well at least let her suck your dick" (allow the prostitute to perform oral sex on the UC). This all took place at the HLMC clubhouse. SA Jackson recorded many of these encounters, and I have reviewed these recordings.

43. SA Jackson was able to observe firearms in the possession of many HLMC members while attending parties and functions at the HLMC clubhouse. Specifically, SA Jackson noted firearms in the possession of many members including **Sheps KHAMSAHU**, Solomon YOUNG, **Darrell PARKER, Lawrence MARTIN**, and **George GADDY**. It should be noted that Solomon YOUNG, **Darrell PARKER, Lawrence MARTIN** and **George GADDY** are previously convicted felons and are prohibited under Title 18 U.S.C. § 922(g) from possessing firearms.

44. In approximately February, 2011, SAs developed another "Christened" member of the Colorado Chapter of HLMC as a CI (hereafter referred to as CI-5). CI-5 is not a previously convicted felon. It should be noted that CI-5 has several previous arrests. CI-5 provided information, conducted controlled purchases, recorded HLMC member meetings and performed other actions as directed by SAs for consideration relating to possible charges in this investigation. To the best of my knowledge CI-5 has provided truthful and substantive information to SAs and law enforcement officers.

45. CI-5 provided information as to drug dealings, drug use, firearms violations, assaults and other activities by HLMC members and associates which take place at the HLMC clubhouse. According to CI-5, HLMC members **Corey RILEY** and **Sheps KHAMSAHU** taught CI-5 how to sell cocaine. CI-5 admitted to having purchased cocaine from several HLMC members including Milton NEWBORN, **Sheps KHAMSAHU** and **Corey RILEY**. Between the dates of March 30, 2011 and July 10,

2011, CI-5 made approximately seven (7) controlled purchases of cocaine from **Corey RILEY** at **RILEY's** residence located at 2331 Pontiac St., Denver, CO.  **Corey RILEY** continued to instruct CI-5 how to cut (increase the volume of the cocaine by adding a non-narcotic substance in order to make more money from each transaction) the cocaine and profit from drug trafficking.  Recordings were made of conversations involved in the controlled purchases.  Your Affiant has reviewed the recordings.

46. **It should be noted that the CIs and the ATF UC information concerning the use of drugs and the possession of firearms at the HLMC clubhouse was gathered over approximately three (3) years.  This information proved to be consistent and verifiable.**

47. On or about August 23, 2011, ATF SAs separately debriefed CI-2, CI-4 and CI-5 (all three (3) CIs are currently or have been "Christened" members of HLMC).  The purpose of these interviews was to discuss and clarify HLMC standard practices relating to illegal activities.  Each of the CIs stated that drug use at the HLMC clubhouse is prevalent.  In approximately July, 2011 the HLMC clubhouse was moved to 4100 Garfield St., Denver, CO.  The CIs described that although the structure at 4100 Garfield Street is smaller than clubhouses previously utilized by HLMC, the HLMC still has parties in which "civilians" are in attendance and drugs are still used and trafficked at the location.  CI described **Calvin RILEY** as having dealt cocaine out of the clubhouse for years and continues to do so despite the fact that he has spent most of the previous two (2) years on Probation for a felony conviction of Attempting to Influence a Public Official, Tampering with Evidence and other counts relating to Arapahoe County Court Case 2008CR000595.

48. The three (3) CIs further stated that marijuana use occurs often at the HLMC clubhouse. The CIs stated that various members supplied marijuana for consumption at the clubhouse, but each agreed that HLMC member **Sheps KHAMSAHU** often supplied marijuana at the HLMC clubhouse and most recently at 4100 Garfield Street, Denver, Colorado. The use of marijuana at the clubhouse was verified by ATF UC SA Jackson on each occasion he attended functions at the HLMC clubhouse.

49. CI-2, CI-4 and CI-5 each stated that the clubhouse is paid for and maintained, to include cable television, utilities and other expenses, through the monies obtained through HLMC member dues. CIs stated that HLMC members are each required to pay $50 per month and are further required to pay $30 approximately every three (3) months for "National" or "Regional" dues. CI-5 stated that these "National" dues go into a National HLMC account which currently has approximately $20,000. CIs continued that dues are either paid to the HLMC president or to HLMC member **Johnie MYERS**, the current Vice-President and longtime Treasurer of the HLMC Colorado Chapter.

50. Each CI stated that **Johnie MYERS** maintains a notebook which accounts for members who owe dues or other money to HLMC. The CIs agreed that **MYERS** maintains this notebook on his person and does not leave it at the clubhouse. Additionally, **MYERS** pays for HLMC expenses such as rent, utilities, and often arranges hotels for club members attending "runs" (organized trips by OMG members) away from the city of Denver, Colorado.

51. Additionally, the CIs described that dues could be placed into a safe located at the HLMC clubhouse. The CIs stated that money made from the illegal sale of liquor at the HLMC bar and some dues were stored in this safe. CIs further stated that a carbon copy receipt

book is maintained with the safe and that each "drop" (each time money is put into the safe) required that a receipt be filled out to accompany the "drop". CIs stated that the safe and receipt book are maintained "behind" the HLMC bar and that only a few members of HLMC have access to the safe.

52. According to information provided by CI-2, CI-4 and CI-5, additional money is obtained for the HLMC Colorado chapter through the illegal sale of liquor at the HLMC clubhouse. It should be noted that CIs have stated, and SAs have verified, that no Colorado license to sell or distribute alcohol is possessed or been applied for by any organization or individual of HLMC. Monies obtained through the sale of alcohol, along with Chapter dues, are used to pay for more alcohol, the HLMC clubhouse and associated expenses, travel expenses for HLMC leadership, travel arrangements for HLMC national leadership attending any function or event located at or near the chapter and other expenses deemed to be in furtherance of HLMC activities.

53. Money from "National" or "Regional" dues goes to HLMC National leadership. HLMC National leadership controls this money and must give an accounting of HLMC National funds yearly at the HLMC National Run or meeting. At these meetings the President of each HLMC Chapter must give an accounting of each individual HLMC Chapter's finances. A national leader (often the HLMC National President) must then give an accounting for and balance of the National HLMC finances. According to CI-5, at the 2011 HLMC National Run, the HLMC National President stated that $20,000 was currently held in the HLMC National account. According to CI-5, money maintained by HLMC National leaders has recently been used to begin purchasing clubhouses for

HLMC Chapters. Specifically, the HLMC clubhouse in Memphis, Tennessee was allegedly purchased with money from the HLMC National account.

54. CI-2, CI-4 and CI-5 were able to recount and describe several incidents in which HLMC members and associates have been physically assaulted at the HLMC clubhouse. HLMC is known as a "Black and Blue" club which means that discipline among members is often physical assaults for violations or perceived violations of HLMC club rules, such as talking to the "wrong" people. HLMC member Lawrence IJAMES was physically assaulted by former HLMC Western Regional President **Corey RILEY** for talking to a former HLMC member who had quit the organization. SAs know that IJAMES was assaulted on or about November 10, 2010. Each of the CIs was able to describe other such incidents occurring at the HLMC clubhouse. Typically, these assaults have been carried out by HLMC members **Corey RILEY**, **Calvin RILEY**, **Richard JOHNSON**, **Lawrence MARTIN**, **Sheps KHAMSAHU**, and other high ranking members of HLMC.

55. SAs have information of assaults against other HLMC Colorado Chapter members including Odis JENKINS, Louis OSORIO, and Joseph KNIGHT. Additionally, SAs learned of an HLMC member associated with the Kansas City Chapter of HLMC and identified only as "STICKS" who was severely beaten for questioning the use of club money by HLMC leadership. CI-3 provided photographs of "STICKS" after the assault which showed multiple injuries to the face. CIs have further provided information relating to multiple assaults which have taken place at the HLMC clubhouse against "civilians" attending HLMC parties.

56. Throughout this investigation it has been brought to the attention of law enforcement officers that HLMC members often carry firearms on their person. At various times

members have been ordered by HLMC leadership to carry firearms in order "to protect themselves". HLMC leaders have, at various times, instructed HLMC members to make sure that their firearms are "clean" (are not tied to any particular crimes) or to get a clean "one" (firearm). Throughout this investigation it has been discovered that many HLMC members or associates are previously convicted felons for crimes including, but not limited to, homicide, rape, sexual assault on a child, assault, possession of a controlled substance, firearms violations, and other crimes. These firearms are often kept in the vehicle or on the person of these members.

57. I have also become aware that on or about June 12, 2007 an individual (identified herein as Z.A.) was arrested while on a train traveling between Denver, Colorado and Cleveland, Ohio in possession of approximately one (1) kilogram of cocaine. Z.A. has spoken to law enforcement officers on several occasions and has agreed to testify on behalf of the government relating to the source of the cocaine. Between or about the dates of February 2005 and June 2007, Z.A. served as a drug courier between Denver, Colorado and Ohio. Z.A. describes that he was introduced to an individual identified to Z.A. as "Manuel". Z.A. describes that he first met "Manuel" at the clubhouse of a motorcycle club and that several other members of this motorcycle club were present at this meeting. Z.A. was able to positively identify (through the use of a photo-lineup) "Manuel" as **Corey L. RILEY**, and further identified a photo of **Calvin RILEY** as having attended the initial meeting. Z.A. stated he received between 5 and 7 kilograms of cocaine from **Corey RILEY** ("Manuel") and transported the cocaine to Cleveland for sale. On one occasion Z.A. further details meeting "Manuel" in Memphis, Tennessee and receiving approximately one (1) kilogram of cocaine while **Corey RILEY** was attending

a National Run for the Hell's Lovers Motorcycle Club. Z.A. has been convicted of several felonies. Z.A. is cooperating with law enforcement in the expectation that his sentence may eventually be reduced by the Court as a result of his cooperation.

### Records Maintained by Officers of HLMC

58. Based upon my interviews with the CIs and the ATF UC and my work in this investigation, I know that HLMC members are different from many other criminal enterprises in that they keep extensive written documentation of their rules and activities.

59. The Regional and Chapter Presidents are responsible for maintaining rosters of the members (to include Prospects and Probationary members) of their respective Chapter and Geographical area.

60. The Regional and Chapter Presidents are responsible for maintaining the portions of the three-piece patches which denote membership and advancement within HLMC.

61. The Regional President maintains a "stencil" which is used to apply the HLMC "tattoo" which members receive once they have been "Christened" and become full members of the HLMC OMG.

62. The Treasurer maintains a monetary record of financial credits and debits of the Chapter. This includes monthly lists of dues paid/owed, total money currently on hand for the Chapter, receipts for payments and other expenses and other financial records relating to the Chapter and to dues paid to the HLMC National account.

63. The Secretary is responsible for taking and maintaining notes of the Chapter's meetings.

64. CIs have stated that HLMC member **Johnie MYERS** is the current HLMC Colorado Chapter Treasurer. CIs state that MYERS maintains a notebook which details current accounts and financial records relating to HLMC so that he can ask for and keep a record

of membership dues. And that **MYERS** maintains receipts and other financial records at his residence.

65. CIs have stated that **Thomas SCHRAH** is the Secretary of the HLMC Colorado Chapter. **SCHRAH** maintains a notebook which details meeting minutes and other club activities. CIs have stated that **SCHRAH** maintains this notebook on his person while attending HLMC meetings, but maintains past minutes and club activity documents at his residence.

66. CIs have stated that Joseph KNIGHT maintains a notebook at his residence which contains HLMC By-Laws, Rules, Notes relating to the founding of HLMC and club history, newspaper clippings relating to HLMC from across the United States and other information to instruct Prospect and Probationary members. CIs have stated that this notebook is primarily used by Probationary members preparing for their "Christening" ceremony.

67. I know from my work throughout this investigation that prospective members are required to fill out a membership application or "dossier". This form is provided to every individual at the time that they attempt to join HLMC throughout the United States. This "dossier" asks for personal information such as name, date of birth, social security number, and other identifying information. HLMC members use these "dossiers" to investigate the prospect, in part, to determine if the individual is a law enforcement officer.

## Permission for Search of Cellular Telephones

68. Based upon my training and experience, as well as through extensive interviews with HLMC members and associates, there is probable cause to believe that HLMC members

maintain in their telephones contact lists which often include names, address, telephone numbers and other information relating to other HLMC members both locally and nationally.  Additionally, cellular telephones with cameras are often used to photograph criminal activities and behavior and these photos are often maintained on the respective phones.  Your Affiant respectfully, requests the court's permission to seize and download the contents of any cellular telephones or mobile devices found on the persons or reasonably believed to be the property of any individuals for which officers and agents have an arrest warrant or for whom there exists probable cause to make an arrest.  I know that HLMC members often communicate with each other through the means of text messages and other message service means.  The use of text messages were often utilized by ATF CIs throughout this investigation as a means of setting up and finalizing drug transactions and other criminal activities.  Additionally, cellular telephones and other mobile devices with cameras are often used to photograph criminal activities and criminal behavior and that these photos are often maintained on the respective phones.  Your Affiant respectfully requests the Court's permission to seize and download the contents of any cellular telephones, smart phones and other mobile devices found to be in the possession of the above described target subjects or reasonably believed to be the property of any individuals for whom officers and agents have an arrest warrant, or for whom probable cause exists at the time of the execution of the warrant for an arrest to be made on any other individuals.

69. I also know that individuals involved in the distribution and trafficking of narcotics often keep customer contacts and source of supply contact information in their phones, smart

phones and other mobile devices. This information allows drug traffickers to conveniently arrange narcotics transactions, both to sell and to purchase narcotics.

70. The government intends to utilize a "Cellebrite" or similar product to download and later examine the contents of these cellular telephones or other similar devices. These products are comprehensive, mobile forensic devices for extraction of information contained on cellular telephones and other mobile devices.

71. The Court has issued arrest warrants for HLMC members **Romell BULLOCK**, **Gregory COLLINS**, **George GADDY**, **Richard JOHNSON**, **Sheps KHAMSAHU**, **Lawrence MARTIN**, **Johnie MYERS**, **Calvin RILEY**, **Corey RILEY**, and **Thomas SCHRAH**. The Court has also issued arrest warrants for former HLMC members **Darrell PARKER** and **James SWITZER**. There is probable cause to believe that the cellular telephones, smart phones and other mobile devices found to be on the person or reasonably believed to be the property of these individuals when they are arrested on January 20, 2012, will contain information relating to the Title 18 U.S.C. and/or Title 21 U.S.C violations for which they have been indicted.

## CONCLUSION

72. Based on the information described above and provided herein, your Affiant respectfully submits there is probable cause to believe that approximately ten HLMC members subject to arrest on federal warrant and evidence of illegal drug trafficking, illegal possession and use of firearms, evidence to support money laundering, and evidence establishing related conspiracy crimes will be found at the HLMC clubhouse at **4100 Garfield Street, Denver, Colorado, after 8:00 pm on January 20, 2012.** Your Affiant respectfully submits there is probable cause to believe that concealed in the clubhouse on

January 20, 2012, after the HLMC members' meeting convenes, there will be contraband, records, documents, photographs, firearms, ammunition or other tangible evidence relating to the organization and structure of the National organization as well as to the Colorado Chapter of HLMC.  Therefore, I request that this court issue an anticipatory Search Warrant for the persons and property described herein, authorizing officers and agents to search for said persons, contraband, books, records, receipts, notes, ledgers, cellular telephones, smart phones and mobile devices, photographs, video tapes, written correspondence, drug scales, packaging material, drug paraphernalia, U.S. Currency, firearms, ammunition and other evidence related to firearms violations and narcotics trafficking as described in Attachment B of this affidavit.  Your Affiant respectfully submits there is probable cause to believe these items to be tangible evidence of Title 21 United States Code, § 841(a)(1), Possession with Intent to Distribute and Conspiracy to Distribute Controlled Substances; Title 21 U.S.C. §§ 856 and 846, Using or Maintaining a Drug-Involved Premises and Conspiracy to do so; or Title 18, United States Code, § 924(c), Use or Carry a Firearm during and in Relation to a Drug Trafficking Crime, or in Furtherance of a Drug Trafficking Crime (including Maintaining a Drug Involved Premises).

Assistant United States Attorney Guy Till reviewed this affidavit on January 17, 2012. Attachment A and Attachment B are here incorporated by this reference.

Your Affiant respectfully affirms that the foregoing statements in this affidavit are true and correct to the best of my knowledge, information and belief.

Signed this __18__ day of January 2012, at Denver, Colorado.


Jason T. Cole
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives


Sworn to and subscribed to before me this __18th__ day of January 2012, at Denver, Colorado.


United States Magistrate Judge